**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANUSHKA DUBEY, DEEP DOSHI,** | ) | |
| **GAURAV PRAMOD GHASE,** | ) | |
| **DHAVAL SHASHIKANT JANGALE,** | ) | |
| **and KUNAL DAHIYA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 5286** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Anushka Dubey, Deep Doshi, Gaurav Pramod Ghase, Dhaval

Shashikant Jangale, and Kunal Dahiya have filed suit against the United States

Department of Homeland Security (DHS) under the Administrative Procedure Act

(APA), 5 U.S.C. § 702. Plaintiffs are foreign nationals of Indian origin who entered the

country after they were issued student visas. Each of them later departed the United

States for a brief period. Then, when each attempted to reenter at a port of entry,

Customs and Border Protection (CBP) found each plaintiff inadmissible and cancelled

their visas based on earlier DHS findings that each of them had engaged in

misrepresentation or fraud. *See* 8 U.S.C. § 1182(a)(6)(C)(i). In this lawsuit, plaintiffs

challenge DHS's inadmissibility findings, contend that they were denied due process

and that their unknowing association with fraudulent companies does not render them

inadmissible.

Plaintiffs assert three claims under the APA. In count 1 of their complaint, they allege that DHS unlawfully found them inadmissible on an incomplete record and without a basis for finding that they had made knowing misrepresentations and thus that the agency acted contrary to law. In count 2, plaintiffs allege that DHS failed to give them prompt notice and an explanation of its inadmissibility determination, contrary to 5 U.S.C. § 554(c), and thus that the determination was arbitrary, capricious, and contrary to law. In count 3, plaintiffs allege that DHS's decision-making was "procedurally deficient and irregular," essentially for the same reasons asserted in counts 1 and 2. DHS has moved to dismiss all of plaintiffs' claims.

**Background**

The Court summarizes the allegations in plaintiffs' complaint as follows.

This case concerns five plaintiffs, all of whom are Indian nationals. Each plaintiff entered the country on a valid F-1 student visa. Plaintiffs allege that under DHS regulations governing F-1 visa holders, a student may participate in an "optional practical training" (OPT) program following her course of studies and may remain in the United States while working within that program.

Anushka Dubey, Gaurav Pramod Ghase, and Deep Doshi were recruited for an OPT program by Apex IT Systems Inc., Kunal Dahiya was recruited by Integra Technologies LLC, and Dhaval Shashikant Jangale was recruited by Wireclass Technologies LLC. Each plaintiff consulted DHS's EVerify database and confirmed that these companies were legitimate US employers, and each then accepted a conditional offer of employment. Each was thereafter told by the employer that to remove the

conditional clause on their employment offer, they would have to undergo training for a fee, for which they would be reimbursed once the employer identified a project for the plaintiff to work on and put the plaintiff on its payroll.  Each plaintiff paid for and completed the training but was never provided with a project, and their employers ultimately stopped responding to their inquiries regarding next steps.  After realizing that the employers did not plan to onboard them onto projects, each plaintiff secured a new position with a different company in the United States.

At some unknown point while plaintiffs were still in the United States, they allege, DHS determined that each of them was inadmissible to the United States.  The basis for these findings is not clearly described in plaintiffs' complaint, but the findings appear to have resulted from a determination, as to each plaintiff, that they engaged in fraud and/or misrepresentation by participating in an OPT program that involved paying for training.  (Plaintiffs contend that they committed no fraud or misrepresentation.)  DHS noted the inadmissibility findings in its electronic records but did not notify the plaintiffs of the findings at the time.  Plaintiffs allege that DHS did not provide them notice that their admissibility status was under review or that inadmissibility determinations had been entered against them.  They further allege that they received neither an opportunity to respond nor an explanation regarding why such action had been taken against them.

At some point, each plaintiff voluntarily traveled outside of the United States for a brief period, either to visit family or for a vacation.  Dahiya attempted to reenter on November 14, 2023; Ghase on January 20, 2024; Doshi on January 23, 2024; Dubey on February 23, 2024; and Jangale on March 26, 2024.  Upon reentry to the United

3

States at legitimate ports of entry, a CBP officer escorted each plaintiff to a secondary examination room. During these secondary interviews, CBP officers informed plaintiffs that they had been marked as inadmissible based on fraud or misrepresentation under 8 U.S.C. § 1182(a)(6). Dubey, Jangale, Doshi, and Dahiya were all given expedited removal orders and were removed to India. Ghase was given the option to withdraw his application for admission in lieu of a formal order of expedited removal being entered against him. He accepted the option and was then removed.

In this lawsuit, the plaintiffs challenge DHS's inadmissibility findings made against each of them.

## Discussion

DHS has moved to dismiss, seeking dismissal on five separate grounds. First, DHS argues that the plaintiffs are improperly joined in a single lawsuit and that the claims of each of them other than Dubey, the first named plaintiff, should be dismissed. Second, DHS contends that the plaintiffs lack standing. Third, it contends that the Court lacks jurisdiction to review expedited removal orders. Fourth, DHS argues that the doctrine of consular nonreviewability precludes judicial review over inadmissibility determinations by Executive Branch officials like those challenged by plaintiffs. Fifth, DHS contends that to the extent the plaintiffs are challenging its determination of inadmissibility prior to their removal, their claims fail because that determination does not amount to a final agency action as required under the APA.

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007)).  At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Id.*  This is also the case when determining standing, at least where, as here, the challenge to standing is a "facial" challenge, namely a challenge based on the adequacy of the complaint to establish standing.  *See Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

## A.    Joinder

In this case, five plaintiffs asserting similar claims have joined in a single suit.  A plaintiff may permissively join additional plaintiffs to a lawsuit as long as he or she "assert[s] a right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."  Fed. R. Civ. P. 20(a).  DHS argues that plaintiffs are unable to satisfy this test because each plaintiff's claim arises from a separate transaction.  It contends that because "plaintiffs are unrelated, worked for different employers, have different nonimmigrant statuses, and were interviewed by different officers—at various times and ports of entry," the Court should not permit joinder of all five plaintiffs and the cases of the plaintiffs other than Dubey should be severed.  *See* DHS Mem. Mot. to Dismiss at 14.  In response, plaintiffs identify a series of common facts, in particular facts demonstrating that each of them experienced the same type of action by DHS, carried out in the same manner—that is, without notice or explanation, and with no opportunity to respond.

The predicate for defendants' argument is certainly true:  the plaintiffs are not related to each other, and DHS made inadmissibility and removal determinations

5

separately for each of them. But the plaintiffs say their challenge focuses not on the separate removal decisions made by CBP when each of them attempted to reenter the U.S. but rather on DHS's earlier determinations that each of them had engaged in fraud and thus were inadmissible. And although these determinations were made separately for each plaintiff, the plaintiffs say that the main focus of their challenge involves the process by which the determinations were made. Viewed that way, there do not seem to be any significant differences among the various plaintiffs, at least none that appear from the complaint or the briefs on the motion to dismiss. Rather, all of them focus their challenge to DHS's actions on a process-related point that appears to be common to all of them.

A court has significant discretion in ruling on matters relating to joinder. *Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 645 (7th Cir. 2024) ("As for permissive joinder, under Rule 20, district courts have discretion, with considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes.") (internal quotation marks and citations omitted). At this point, the specific point of attack for each of them is the same: DHS determined each plaintiff to be inadmissible the same way, effectively behind the curtain, in a way that was procedurally infirm. Viewed this way, the Court concludes that the cases satisfy the "same . . . series of transactions or occurrences" requirement of Rule 20(a). The Court therefore declines DHS's request to dismiss the claims of four of the plaintiffs on this basis.

## B.    Standing

To establish standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3)

that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact is a "concrete and particularized, actual or imminent invasion of a legally protected interest." *Id.* at 555.

DHS takes issue with the injury-in-fact element; it argues that the plaintiffs have not alleged an injury that is actual or imminent. Specifically, it contends that plaintiffs have not alleged any plan to return to the United States and therefore that their injuries are speculative.

This argument is utterly lacking in merit. The plaintiffs squarely allege that each of them "was attempting entry for a return to the homes they established in the U.S. while on nonimmigrant F-1 or H-1B visas." Pls.' Resp. to Def.'s Mot. to Dismiss at 11. And each of them was stopped, and removed, *while at a port of entry after returning to the United States.* This is enough to establish an intent to return that was thwarted, and thus a concrete, non-speculative injury.

The Court also notes that the Seventh Circuit and other courts have indicated that the lost opportunity to obtain permanent residency or adjustment of status by itself amounts to an injury in fact. *See Musunuru v. Lynch*, 831 F.3d 880, 882 (7th Cir. 2016); *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 162 (3d Cir. 2015); *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 638 (6th Cir. 2013); *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1259–60 (11th Cir. 2014); *Garcia v. Sessions*, 873 F.3d 553, 556 (7th Cir. 2017) (loss of statutory right to apply to asylum). The same is true here; plaintiffs allege that DHS's fraud finding has an ongoing impact on their ability to return to the United States. For these reasons, DHS's challenge to the plaintiffs' standing lacks merit. *See Matushkina*

*v. Nielsen*, 877 F.3d 289, 293 (7th Cir. 2017) (explaining that plaintiff's injury was concrete, particularized, and imminent because "Matushkina had an interest in her admissibility to the United States, and the injury to that interest is apparent on the face of the complaint.  The CBP officer entered the inadmissibility finding in the lookout system, Matushkina's nonimmigrant visa was cancelled, and a U.S. Consulate later denied Matushkina's request for an immigrant visa because of the earlier inadmissibility determination.").

**C.  Doctrine of consular nonreviewability**

DHS argues that the doctrine of consular nonreviewability precludes the plaintiffs' claims.  The doctrine of consular nonreviewability "instructs that ordinarily, visa decisions made by consular officers abroad are not subject to judicial review."  *Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024); *see also, Dep't of State v. Munoz*, 144 S. Ct. 1812, 1282 (2024) ("The [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decision.  This principle is known as the doctrine of consular nonreviewabilty.") (footnote omitted). DHS argues that the doctrine applies more broadly to inadmissibility determinations of all types made by any executive branch official, including the DHS officers in this case.

As DHS argues, there is caselaw to the effect that a plaintiff may not end-run the doctrine of consular nonreviewability by suing non-consular officials, *see Matushkina*, 877 F.3d at 295, and that the doctrine "applies even where a plaintiff challenges some other, related aspect of a consular officer's decision to deny a visa."  *Pak*, 91 F.4th at 900–01.  But that is not what the plaintiffs are attempting in this case.  Rather, consular officials *approved and issued* plaintiffs' visas.  The determination that plaintiffs are

8

challenging is not a visa denial by a consular official but rather a determination by DHS— *after* consular officials has issued their visas and the plaintiffs were already in the United States— that they had participated in fraud or misrepresentation and thus were inadmissible. And plaintiffs have disavowed any challenge to CBP's determination to exclude them when they attempted to return to the United States. Instead, plaintiffs contend that DHS's earlier determination has adverse and ongoing consequences to their *future* admissibility.

None of the cases cited by DHS apply consular nonreviewability this broadly. The only one that comes close is *Matushkina*, but that case is distinguishable. The plaintiff in that case was found inadmissible upon entry in 2009 based on a determination by CBP, at the port of entry, that she had made a misrepresentation on her visa application. Then six years later, when she applied for a visa on a different basis, a U.S. consulate denied the application based on the 2009 inadmissibility determination. Though the plaintiff argued that consular nonreviewability did not apply because she was challenging the 2009 inadmissibility determination and not the 2015 visa denial, the court noted that she did not file suit in 2009 but did so only after the consular visa denial in 2015, which suggested that she sought to indirectly attack the consular decision itself. *See Matushkina*, 877 F.3d at 295. The present case is different. There was no visa denial by a consular official, either prior to a plaintiff's inadmissibility determination or currently; the plaintiffs *obtained visas.* Thus, they are not challenging a consular decision, even indirectly. And their failure to file suit earlier, when DHS made its inadmissibility determination, is easily explainable unlike in *Matushkina*: the plaintiffs say they were not given notice that the determination had

been made and thus were unaware of it.

DHS cites no Seventh Circuit caselaw establishing that consular nonreviewability applies to an inadmissibility decision made by DHS officials that is entirely distinct from any consular decision regarding issuance of a visa, let alone in a situation where a visa was *granted* by the consular official, not denied. The Court concludes that plaintiffs' challenge to DHS's inadmissibility finding is not barred by the doctrine of consular nonreviewability.

**D.      Expedited removal orders**

Upon arrival at a port of entry at the United States border, each plaintiff (except for Ghase) was given an expedited removal order by CBP and was then removed to India. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) stripped courts' jurisdiction to review expedited removal orders except in narrow circumstances including limited habeas corpus proceedings under section 1225(e)(2) and limited systemic challenges under section 1225(e)(3). *See* 8 U.S.C. §§ 1252(a)(5), 1252(a)(2)(A)(i), 1225(e)(1)–(3). Plaintiffs do not assert any claims that fall within these exceptions.

As DHS notes, the APA precludes a claim in cases where another statute bars judicial review. 5 U.S.C. § 701(a). DHS contends that the Court lacks jurisdiction over plaintiffs' claims because they are effectively challenging expedited removal orders that courts are precluded by statute from reviewing. In support of this proposition, DHS cites to *Odei v. Department of Homeland Security*, 937 F.3d 1092 (7th Cir. 2019), a case in which the Seventh Circuit concluded that the district court lacked jurisdiction to review CBP's determination that an individual was inadmissible, resulting in cancellation of his

visa.

The plaintiffs argue that *Odei* is distinguishable because the plaintiff in that case was challenging a determination made at the port of entry, whereas the plaintiffs here are challenging not their exclusion by CBP but rather the earlier determination by DHS—while the plaintiffs were still in the United States—that they were inadmissible. *See, e.g.*, Compl. ¶¶ 10 (referencing "DHS's determinations that Plaintiffs are inadmissible") 11 ("Each Plaintiff now knows DHS found them inadmissible"), 12 ("Defendant has found Plaintiffs inadmissible"), 141 ("DHS labeled Plaintiffs, the victims of the fraud, as 'knowing co-conspirators' and issued inadmissibility determinations that must be enforced by al agencies with a role in immigration."). *Odei*, however, says that this is a distinction without a difference. In that case the plaintiff obtained, in Ghana, a visa to enter the U.S. for missionary and academic purposes. But after questioning the plaintiff at the port of entry, CBP determined that the visa was invalid for his intended purposes; found him inadmissible; and cancelled the visa. The plaintiff initially indicated an intention to apply for asylum, so he was not immediately removed. But later, he dropped his asylum claim, withdrew his application for admission, and returned to Ghana voluntarily. *See id.* at 1093. He then sued to challenge the decision not to admit him. Faced with the government's contention that section 1252(a)(1) barred review because the plaintiff was challenging an order of removal, the plaintiff argued that there was none because he left voluntarily. The Seventh Circuit rejected this argument, concluding that the statute's jurisdiction-stripping provision removed jurisdiction "to review orders *to remove* and also orders that an alien *is removable*." *Id.* at 1094. Odei's case fell into the latter category; "the initial determination that he was

inadmissible . . . was . . . an 'order of removal.'"

The plaintiffs' case is not on all fours with *Odei*; unlike in that case, they are not challenging decisions made by CBP at the port of entry but rather earlier decisions by DHS. But the principle of *Odei* still applies; each plaintiff is expressly challenging a determination by DHS that they were inadmissible. That was the determination upon which CBP relied in excluding them and ordering them removed, and under *Odei* "the initial determination that [the plaintiffs] were inadmissible" amounts to an order of removal. Thus, under section 1252(a)(1) the Court lacks jurisdiction to review DHS's determination.

**E.    Final agency action**

Because the Court has concluded that the decisions plaintiffs challenge are nonreviewable as a matter of law, it need not address DHS's contention that the plaintiffs' claims fail because they are not challenging final agency actions as required under the APA.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion to dismiss [dkt. no. 11]. The Clerk is directed to enter judgment stating: This case is dismissed for lack of jurisdiction.

Date:  February 3, 2025

_____
MATTHEW F. KENNELLY
United States District Judge